Now ready for the case of Lester Smith v. Gregory Dozier, and we'll be happy to hear from counsel for Mr. Smith. Good morning, Your Honors. I'm Ross Berbathon from the Georgia AG's office on behalf of the appellant. Oh, I'm sorry. I'm not used to y'all going first. The district court ruled here that Lester Smith was not entitled to grow an unlimited beard as a religious exemption under our LUPA. And we think the court got that ruling right. And you'll hear from my friends on the other side why they think it was wrong. But the one thing we can both agree on is that the unlimited beard issue has been the focus of the litigation from the start. It's what Mr. Smith requested in his complaint, and has demanded throughout including this appeal, where the district court went wrong was going beyond that request and granting a compromise from any of the three inch beard that Mr. Smith never asked for and didn't want and that the department never had a chance to prepare for or litigate. And then they do ask questions about this length beard. I mean, you questioned your expert about that. I believe Your Honor in the I'm sorry, you weren't shocked by it. I mean, that was kind of in play, I guess. Well, no, I don't think that's entirely accurate. We were surprised at the district court's compromise order. And I think that's true of both sides, because the other side saying that they don't want it either. And throughout, I mean, Mr. Smith was asked directly, what do you want? Unlimited beard, indefinite beard? Well, I guess, you know, then the question is, did you present evidence to justify a half inch beard or whatever your policy is now, as opposed to an untrimmed beard? And Judge Sand seemed to make findings throughout that you had not carried your burden to show why there were safety issues and the other reasons that you gave. Your Honor, I disagree with that. Ultimately, our burden under our loop is with respect to the individual inmate. And again, Mr. Smith's request here was an unlimited beard and the district court found that the department had offered, quote, logical and persuasive reasons that allowing untrimmed beards would be unmanageable for the department. The court went on. This is Judge Newsom. Can I just press you on that a little bit? Because as I read the district court's order, all of the findings that the district court made for reasons to reject the half inch beard policy seem to translate right over sort of straight line to all beards. So, when he says there's no like sort of weigh station at three inches, I couldn't tell that there was any evidence anyway presented about three inches. He made sort of his own judgment that it was plausible in his word that three inches might sort of be a breaking point. But all of the evidence, the evidentiary findings that he made would seem to go for you know, search, you know, inmates can self-search beards generally. And, you know, beards aren't any different than clothing, mouths, or hair. He never really said, none of these findings sort of was specific to three inches. Three inches, notwithstanding some questioning about hair length or fist, you know, sort of a fistful, as an evidentiary matter seems to have come out of the blue. I'd agree with that, your honor. I mean, that was certainly the focus of the district court's ruling. And, you know, so our contention here is that if that was going to be the focus of this litigation, A, it was Mr. Smith's obligation to ask for that accommodation. And B, we should be afforded the opportunity to respond to that. Because obviously, it's a lot between a completely untrimmed, you know, ZZ Top style beard down to your waist, and a relatively short three-inch beard. And courts have acknowledged that. So I want to... But I guess the question is, if you knew that Mr. Smith was asking for an untrimmed beard, and everybody had an opportunity to put on their evidence, and they did, and the district court then made findings about that went to beards, beards, beards, beards, beards. Why isn't the logical implication of the district court's conclusion that, or, you know, sort of the district court's opinion that he was, you know, right to conclude that the half-inch beard policy won't pass muster, but then was wrong to stop at three inches. All of the findings seem to say untrimmed. Your Honor, I just don't think that's how an RLUIPA analysis can work. Even if the three-inch figure seems to be, and I agree, it's an intuitive sort of compromise figure. But this is where RLUIPA analysis is different from the sort of mine run of litigation, because it goes to the prisoner's individual religious belief and his sincerely held religious belief. And we have to, I mean, RLUIPA is stacked against the government by design, but for that framework to work, we have to rely on plaintiffs to tell us what accommodation they're seeking. And in the litigation, a fist-length beard came up a few times inadvertently, but it was consistent throughout what he wanted. I want to just push you on Judge Newsom's question. I mean, Judge Sand said, you know, that there was just a failure of proof. I've stated Georgia on this. There was a failure of proof that beards cause a problem with contraband. Your own expert said it's really no different. I mean, you know, they're going to hide stuff, you know, anywhere in their clothes and their hair. There's really no difference. And Judge Sand said that was a failure of proof on the contraband issue. And he kind of went through each one of your, you know, reasons and said that there was a failure of proof. I would push back just a little bit, Judge Martin, because again, the reason this is a little bit tricky for us on appeal is that the ruling is broken up into a and then the analysis, the findings you were talking about were expressly a shift to why the department couldn't carry its burden as to three-inch beards. Okay, so I mean, but the remedy you're asking for is to go to the half-inch beard, right? Is that the remedy you want from us? The remedy we're asking for is to say that Lester Smith isn't entitled to an untrimmed beard, which was the only claim at issue here in this case. And the case law is clear, both from Holt and this court, that what the government has an obligation to respond to... Well, let's take that, Mr. Smith's untrimmed beard. I still say that what Judge Sand's, that his order, and I think this is what Judge Newsom is saying, says there was, you failed to prove that your reasons for not allowing him to grow a beard were sufficient to overcome his religious belief that he needed to have an untrimmed beard. Your Honor, the district court, in talking about untrimmed beards specifically, granted, there's not a lot there, but the district court did say that untrimmed beards better disguise faces, posing identification risks, that they better hide contraband. They're more... No, I mean, I'm reading from it. I mean, I know what you're talking about. You're talking about how he's justifying the three-inch beard, but he says GDOC has not shown that his concerns about contraband and beards cannot be addressed by simply searching beards, especially where longer head hair is allowed and can be adequately searched. That's true. If your Honors disagree with me on this point, then I think the appropriate remedy is a remand for a particular discussion of the claims at issue, because the reason we're having a lot of this confusion is that it's not clear what the district court's order was directed at. We think it's a fair reading of the district court's order to say that the unlimited request, which was the only requested issue, was denied, but we're going to go on to Part B, which is this compromise ruling, and the law is clear that courts don't have the discretion to just engage the judicial imagination. I understand your argument on that. I do, but I just want to talk about the reasons that you gave for the need to confine beards to half-inch. I mean, another one was that it allows Muslim inmates to identify each other. It seems like, or the way I read Judge Sands' order, he found a failure of proof as to that justification as well, because he said, you know, that already happens, and Georgia Department of Corrections didn't come forward with any evidence that that created a problem. So again, failure of proof. That may be true on that point, Your Honor, but one that I would like to highlight, because a lot of these points are unlimited, what have you, there's very little doubt that having an unlimited beard dramatically alters the appearance of the inmate and obscures facial features in a way that not a lot of other hair or anything else can. So there was specific testimony in this case about inmates utilizing very long beards to dramatically change their appearance, both before and after escapes, to facilitate escapes. There was, the department has specific experience with inmates who have harmed staff hiding handcuff keys, even in their short beards. So it's true. And of course on that issue, Judge Sands said, you know, you didn't come forward with any evidence about that because Georgia Department of Corrections doesn't have any experience with long beards, you know, causing identification problems. But that, you know, you had the ability to inquire about, you know, instances of that happening in the other Department of Corrections and you didn't inquire, has not sought to inquire about these issues with states that allow beards. That's what I would push back on. I know my time's expiring. If I could just briefly answer this question. I'd like an answer. Our obligation under Holt, Holt said that when you've got a bunch of states that do it differently, you've got to offer persuasive reasons for why you're taking a different route. But what they didn't say, and what this court clarified in Knight was that doesn't have to take the form of specifically rebutting. Here's why we don't do this. What X state does, what Y state does, what Z state does. Those policies might work for other states, but it was Georgia's burden to show why they wouldn't work for Georgia. And I think the district court held that we carried that burden the same way that Alabama did in Knight on a similar record. And I'll reserve the rest of my time. All right. Thank you. All right. Now we'll hear from Mr. Smith's lawyers. Thank you. Thank you and may it please the court. Judge Newsom and Judge Martin, you are exactly right that all the district court's findings about the speculative nature of Georgia Department of Corrections evidence points to granting Smith his untransferred. Georgia Department of Corrections counsel called the three-inch limit an intuitive compromise, but our LUPA does not permit denying religious liberty on the basis of intuitive compromises. Mr. Smith wants to grow an untransferred as demanded by his Islamic faith. The district court correctly found that Georgia Department of Corrections provided no non-speculative reasons why it could not accommodate at least three-inch fears. However, the district court erred by because the record provided no evidence to show that any concerns raised by untransferred were not similarly speculative. When Congress unanimously passed our LUPA, it intended to replace a legal regime that gave prison administrators enormous deference with one that insists on a very high standard of evidence and justification. Prison administrators can no to practice their religion on the basis of intuition or speculation. Our LUPA puts the burden on prison administrators to prove with evidence that denying a particular religious accommodation is the least restrictive means of furthering some genuinely compelling interests. This is a daunting standard meant to prevent the arbitrary denial of inmates' religious rights. Ms. Wasserman, let me ask you a question as it relates specifically to Mr. Smith. He is a convicted murderer serving a life sentence, and he has received 44 disciplinary reports in which he's been found guilty of nearly 70 offenses, including four assaults on inmates or correctional officers, threats to correctional officers, and possession of both drugs and weapons. So why do you believe that GDC has not carried its burden as to Mr. Smith particular? Your Honor, Georgia Department of Corrections never provided any individualized consideration. They denied Smith the right to grow his beard because they had a blanket policy that did not allow for any religious accommodations at all. Georgia Department of Corrections must do an individualized analysis under the strict standard demanded by our LUPA. The mere fact that an inmate has been disciplined in the past is not enough to meet this requirement, and at no point did Georgia Department of Corrections provide evidence that Smith was ever called contraband on his person. The issue is whether he would use the accommodation to violate their security concerns, and they never provided evidence on that. So, Your Honors, the central issue in this case is whether Georgia proved, with evidence, persuasive reasons, why Georgia prisons are somehow different and entitled to enforce arbitrary limitations. They didn't. Smith's cross appeals focus on the reality that the district court's findings do not generally support or permit an arbitrary limitation of the remedy to three inches here. When rejecting the Georgia Department of Corrections' half-inch limitation, the district court considered their justifications and evidence carefully and held that it was all based on speculation and total ignorance of how other prison systems operate. But when turning to the issue of whether Mr. Smith could grow an untransparent beard, the district court unjustifiably abandoned the rigor demanded by our LUPA and said that the evidence made it plausible that untrimmed beards might present security concerns. But plausible is not good enough under our LUPA. A denial of religious liberty has to be based on proof, with evidence, that the restriction is the least restrictive available means of accommodating some compelling interests. And again, the record demonstrates that 38 other states and the federal borough prisons managed to accommodate untrimmed beards. Georgia Department of Corrections has never come to any persuasive reasons why it is different. The district court found that Georgia Department of Corrections' witnesses had no knowledge of how other systems operate, and they testified to that effect. Georgia Department of Corrections... Can I ask you this, because before you sit down, I just want to hear your best answer. What's your best response to the ninth decision that Bergeton mentioned at the end of his argument? I'm sorry, can you repeat the question? I didn't hear it either. Yeah. Okay, well, that's no good. Can you hear me now? Yes. What's your best response to the ninth decision that Mr. Bergeton mentioned at the end of his argument? Your Honor, the main difference between night two in this case is that the district court in that case chose to credit the prison administrator's evidence, while in our case, they chose to credit the evidence of Mr. Clark. In night two, the district court specifically found... I'm sorry. Also, night was tried before hold, and the court of appeals did not require them to retry the case just because the law had changed. While in our present case, we explicitly brought up evidence of the practices of other states, which Georgia Department of Corrections had no response to. So, Your Honors, returning to my argument, Georgia Department of Corrections complained that the district court ordered them to change the policy rather than just confining its injunction to Mr. Smith himself. But Georgia Department of Corrections made their own bet on this by refusing to ever consider prisoners' religious needs on an individual basis. Their policy was that they don't permit beards longer than half an inch, and they won't consider any religious exemptions. That's the policy Mr. Smith was forced to challenge, and the district court found that the Georgia Department of Corrections completely failed to justify it. Their blanket policy is unlawful under our LUPA, so an injunction against any blanket policy precisely fits the an overly restrictive interpretation of the PLRA that has been rejected by both the Supreme Court and the Circuit Court. The PLRA does not prevent relief that benefits more than just the plaintiff. The Supreme Court clearly rejected that notion in Brown v. Pata. Georgia Department of Corrections' extremely narrow interpretation of the PLRA would have required a different outcome in Brown because the Supreme Court explicitly held that it was appropriate for the injunction there to apply to parties not before the court. Similarly, in Crawford v. Clark, the First Circuit upheld an injunction requiring the Massachusetts Department of Corrections to provide the plaintiff with broadcasts of Juma services by closed circuit television in any special management unit in which they are housed in the future, not just the original unit at issue. Furthermore, in Native American Council of Tribes v. Weber, the Eighth Circuit upheld the district court's injunction requiring the SCDC to amend its tobacco policy to ensure that all inmates could participate in Native American religious ceremonies are afforded the opportunity to use tobacco during ceremonies. Can I ask you a couple of questions? This is Judge Newsom. Am I coming through okay? Yes. Okay. How do you square the system-wide relief here just with the plain language of the PLRA, no further than necessary to correct the violation with respect to a particular plaintiff? Your Honor, first of all, Smith was challenging the constitutionality of the blanket policy as applied to everyone, not just to him. And when he asked for relief, he asked for relief for him and similarly situated inmates. Furthermore, Was it a class? Wait, wait, wait, wait, wait. Was this a class action? No, Your Honor. Okay, then I still don't think I understand how the injunction squares with the plain language of the PLRA. Your Honor, if we were to take such a literalist approach to the language of the PLRA, it would have required a different outcome in Brown v. Plata, where the Supreme Court recognized that the system-wide revenue could fit. Okay. Just remind me, and I'm sorry, I honestly don't remember the answer to this question. So the PLRA was squarely at issue in Plata? Yes, Your Honor. And how did the, what, just remind me, what did the Supreme Court say about the plain language of this statute? Your Honor, the court acknowledged that the scope of the remedy must be proportional to the scope of the violation and the order must extend no further than necessary to remedy the violation. Was Plata a class action? Yes, Your Honor. Well, doesn't, I mean, doesn't that make a big, make a big difference? No, Your Honor, because as the Supreme Court said, the remedy must fit the violation. This was a system-wide violation. It's a blanket policy that applies to all inmates, not Justice Smith himself. So, Your Honor, the injunction, sorry, the only way to redress the, oh, I'm sorry, Your Honor, I see that my time is up. All right. Well, thank you. We appreciate the argument and we'll hear from Ms. Bortnick. May I please the court, Yael Bortnick for the United States. Holt makes clear that RLUPA's least restrictive means requirement is exceptionally demanding. It requires the state to prove that it lacks other means of achieving its compelling interests. In analyzing whether GDC met this high burden, the district court properly applied to the First, after Mr. Smith established that the vast majority of other states and the federal government allow longer beards, GDC failed to provide persuasive reasons why it must take a different course. Second, GDC's experts were not entitled to broad deference, really relied on inconsistent and contradicted assertions regarding the consequences of allowing beards. The United States respectfully asked this court to affirm the district court's analysis with respect to these two issues under Holt. Turning first to the proper weight to give to the practices of other jurisdictions, Holt requires that if a less restrictive means is available to the government to further its interests, the government must use it. And that's why evidence of other jurisdictions practices is highly probative. A prison's claim that a specific restriction on religious exercise is the least restrictive means of advancing its interests allow the practice. Here, the district court found that 37 states. So I realize this might be outside the ambit of the sort of the position that you sort of the narrow position that you've taken in your brief, but you have any comment just having read the order on the questions that Judge Martin and I were asking about sort of the logical implications of Part A of the district court's opinion. The way I read Part A, it seems to say failure of proof on the half-inch beard policy. Everybody knows that the only thing, the only sort of relief that the Smith has sought is an untrimmed beard. And it seems to me just candidly in reading Part A that the logical implication of the bindings in Part A are that the relief to Mr. Smith, namely the untrimmed beard should be granted. Do you, you know, representing the government just have any comment having read the order on whether that's right or Your Honor, no, the United States doesn't take a position on either GDC's arguments that the three-inch remedy, it didn't have sufficient notice of that below or on Mr. Smith's arguments on his cross appeal that he should be entitled to five inches. I would know as a representative of the government that BOP does allow untrimmed beards. It has for more than four decades. The Supreme Court recognized in Qatar that BOP has managed the nation's largest correctional system under the same height and scrutiny standard as RLUPA and does so while maintaining prison security, public safety, and the constitutional rights of other prisoners. Turning back to the evidence of other jurisdictions under Holt, when so many other prisons accommodate a religious exercise, at a minimum, states must provide persuasive reasons why they must take a different course. And Knight does not negate Holt's persuasive reasons requirement. It simply found in that case that the detailed record there was sufficient to prove that Alabama's policy was the least restrictive means. But unlike in this case, in Knight, there was no clear finding that other jurisdictions would allow the specific requested accommodation. Here, the district court's finding is clear that 39 other jurisdictions would allow untrimmed beards. The district court properly considered evidence of other jurisdictions in conducting its least restrictive means analysis. The district court also afforded the proper deference due to prison officials. Holt says that deference requires respect for prison officials' expertise and experience, which means that courts must be aware that they're conducting the RLUPA analysis in the context of a prison, and there are particular safety and security concerns in this a court's responsibility to apply RLUPA's rigorous standard, and courts are not bound to defer to prison systems assertions. Rather, Holt instructs judges to question evidence and to reject policies grounded on mere speculation and conjecture. On appeal, GDOC argues that it's entitled to the same deference as the prison in Knight, but the court in Knight didn't simply defer to prison officials. Rather, it weighed the evidence, made credibility determinations, and resolved disputed issues of fact in favor of the state. Here, too, the judge made factual determinations, but he determined that Mr. Smith's affirmative evidence showed that there were effective alternatives through which GDC could further its compelling interests, and that this evidence was more credible in light of the inconsistent and contradicted nature of GDC's expert testimony. There are no further questions. We ask the court to affirm the district court's judgment. Mr. Bergethon? Thank you, Your Honors. I'd like to make a few quick points, and to follow up first on what Judge Newsom was getting at. There seems to be a good bit of confusion here over exactly what the district court ruled, and it sounds like there's some sense, at least for some members of the court, that the court might have ultimately ruled that the district court was wrong. I would disagree, but to the extent there is any confusion on that point, we don't think that this court should decide in the first instance what it was that the district court actually meant. The best remedy in that situation is to remand to the district court with instructions to perform its analysis with respect to the one accommodation that Mr. Smith had requested, and that is the untrimmed beard, and also with instructions not to consider the three-inch compromise remedy or the statewide relief, but also following up... I want to ask you about the statewide relief, because Ms. Wasserman brought it up. So, as a practical matter, if the ruling in this case was Mr. Smith gets to grow an untrimmed beard, wouldn't the Georgia Department of Corrections have to change its policy to allow that for other inmates as well? It would certainly have an obligation to re-examine its policy, and that is individualized. That would not necessarily mean dictate the same result. Well, the reason why I ask is because I think it was in your brief. You say that after Holt v. Hobbs, the Georgia Department of Corrections changed its statewide policy to allow a half-inch. That's correct. So, wouldn't... I mean, you'd kind of have to do the same thing here, wouldn't you? Well, there's a distinction, Your Honor, and Judge Newsom raised this, that the PLRA is clear on what remedies can be issued in this court. No, I'm not talking about what remedies the court's given. I'm talking about what you have to do as a matter of policy. That's correct. That's correct, Your Honor. I mean, that's what you did after Holt v. Hobbs. You changed your policy statewide. That's correct, and we'd have an obligation to look at that again, but in the little bit of time I have left, I would like to reiterate to the court that in the end, this is an individualized analysis, and Judge France touched on this a bit. This comes down to whether Smith individually was entitled to an unlimited beard, and we think that the district court found that he wasn't, but regardless, if you look at Mr. Smith's record, it's full of violence. It's full of contraband. It is full of failing to even if the court disagrees with us on the overall issue, we would ask that the court hold that Mr. Smith is not entitled to an untrimmed beard. Thank you, Your Honor. Great. Thank you. We will take your case under advisement, and we appreciate your presentation, Mr. Bergerth. I know you also love hearing from students in the 11th Circuit, so we appreciate their appearance as well, and of course, we appreciate your testimony as well. So with that, I'm going to call a recess, and I'll meet for conference with my colleagues in 10 minutes. Does that work for you guys? Okay. All right. Court is in recess until nine o'clock tomorrow morning. Thank you. Thank you.